CHARLES S. DOW ET AL., PROSECUTORS, v. BOARD OF COMMISSIONERS OF THE CITY OF BAYONNE, DEFENDANT.

Argued October 7, 1936—Decided December 19, 1936.

Before Justices PARKER and LLOYD.

For the prosecutors, *John Drewen*.

For the defendant, *Alfred Brenner*.

The opinion of the court was delivered by

PARKER, J.   The writ brings up for review a resolution of the board of commissioners of Bayonne, adopted July 30th, 1936, and providing for the construction of a great harbor terminal in New York bay and the acquisition of the land, land under water and water rights required for such purpose; the project to be financed partly by the federal public works administration and partly by the issue and sale of municipal bonds.   The return comprises (A) offer by the P. W. A. dated May 9th, 1936, and resolution of acceptance May 13th; (B) an ordinance and a resolution for the issue of $3,000,000 in bonds, passed December 14th, 1935; (C) a resolution presented to the board on July 30th, 1936, laid over until August 18th, 1936, and finally passed on that date.   This is the resolution particularly in question.   It covers some seventy-five pages of the printed book, and contains *verbatim* the forms of the following documents proposed to be executed: (1) agreement between the city and a corporation called "The

Central District, Inc.," relating mainly to the projected construction work; (2) lease by the city to the Central District, Incorporated, of the terminal property when acquired and while under construction and thereafter; (3) an agreement between the city and the railroad company conferring on said railroad company certain perpetual easements of right of way for railroad purposes, with exclusive rights to operate railroad facilities at the terminal, with stipulations by the railroad company against discriminations, &c. Several "schedules" referred to in the resolution are annexed thereto, to wit: (4) a map of the property; (5) form of deed by the Central Railroad Company to Central District, Incorporated; (6) form of agreement between the city, the Central Railroad Company, and Central District, Incorporated, relating to executing and financing the work; (7) forms of three proposed riparian grants. As we understand the matter, the resolution contemplates the contemporaneous execution and delivery of the documents numbered 1, 2, 3, 5 and 6, the result of which will be to vest title to some seven hundred and fifty acres of land and land under water in the city, with certain reservations presently to be noticed. About one-third of this, or some two hundred and thirty acres, is to be conveyed to Central District by the Central Railroad Company subject to reservations, and Central District on assembling the whole tract (except the three riparian grants) will convey to the city subject to the same reservations, not merely as to the two hundred and thirty acres, but as to the remainder of the property.

The municipal resolution under review is based wholly on powers conferred by the statute of 1920 (*Pamph. L., p.* 358) authorizing cities fronting upon navigable waters to establish municipal docks, &c., and to raise money for such purposes without regard to debt limits theretofore established. By the first section the city is empowered in furtherance of such a project "to use any available lands owned by such city and to acquire such other lands and rights in lands, including lands now or formerly under water, as may be necessary for the purpose. 'Such city shall have power to acquire in fee-simple all the lands, lands under water and all other property,

easements, rights and appurtenances, by purchase, condemnation or grant, and to enter into such contract or contracts with the Board of Commerce and Navigation, or other board or department of this State and with other municipalities, persons and corporations for the use of any lands, lands under water or rights therein, and for the erection, construction and equipment of such industrial terminal and the appurtenances thereof as may be necessary to carry out the purposes of this act.' "

The first point made for prosecutors is that the authority given, as to lands, is to acquire them in fee-simple, and that the acquisition proposed, if carried out, will not be an acquisition in fee-simple. This we proceed to examine. The "acquisition" clause has been reproduced in full because for defendants it is argued that the quotation in prosecutor's brief is incomplete. The latter part of the clause, beginning with the words "such city" we consider to be plainly inclusive and controlling of the former. The acquisition, whether of lands or "rights in lands," *i. e.*, "easements, rights, and appurtenances" is to be in fee-simple, according to this statute. At this time we are immediately concerned with the acquisition of lands, upland or under water; and we consider that the plain intent of the statute is that it confers authority to acquire lands in fee-simple, and in fee-simple only. It seems to us inconceivable that the legislature ever intended that works of the magnitude contemplated by the act should be constructed except upon lands in the untrammeled ownership of the city.

Applying this to the somewhat roundabout scheme of acquisition exhibited by the documents, it appears that as to a large part of the proposed development, if not indeed all of it, the city is to take something different from a fee-simple. We read in Blackstone (II, 104) that "tenant in fee-simple [or as he is frequently styled, tenant in fee] is he that hath lands, tenements, or hereditaments, to hold to him and his heirs forever: generally, absolutely, and simply." But no such estate is contracted for or contemplated by the chain of instruments under examination. To express the thought in the briefest manner, the intent is to acquire a fee expressly subject to a monopoly by the railroad company of operating all

transportation facilities on the lands conveyed, with a reversion of title in case at any time such monopoly is disturbed. It is proper, however, to point this out in some detail. First, the Central Railroad Company is to convey to Central District, Incorporated, the two hundred and thirty acres above mentioned, but reserving a thirty-three foot right of way for railroad main stem and extensions; and the proposed deed, form of which is annexed to the resolution as Schedule B, and referred to therein, recites that "this conveyance is executed and delivered upon the express condition that if, by reason of any act of the party of the second part or its successors or assigns, not required by any federal or state law, or by a final decree of any court of competent jurisdiction, any railroad tracks leading into or out of the Terminal area or into and out of any additions thereto or extensions thereof connect with any railroad other than the railroad of the party of the first part without the consent of said party of the first part, or any traffic transported by rail into or out of said Terminal area or into or out of any additions thereto or extensions thereof is transported by rail by any railroad other than the party of the first part without the consent of the said party of the first part, or if the City, because of any statutory limitations, is unable to grant and convey to the party of the first part the perpetual easements of right of way for railroad purposes provided for in Section 1 of the agreement of even date herewith between said City and said party of the first part, or if by reason of any statutory limitations or otherwise any such easements granted by said City pursuant to said Section of said agreement shall be held and determined to be invalid or shall be terminated for any reason other than the violation of the third paragraph of Section 1 of the agreement of even date herewith between the City and the party of the first part, the premises herein granted and conveyed shall revert to the party of the first part and this conveyance shall be of no further force and effect." By the language of the resolution, Central District, Incorporated, is to convey to the city the whole seven hundred and fifty or more acres including the two hundred and thirty acres, "subject, however, to certain easements for railroad purposes reserved, and

covenants, conditions and/or (*sic*) limitations to be contained in a certain deed of The Central Railroad Company of New Jersey to The Central District, Incorporated, for part of the above described lands, a copy of said deed being hereto annexed and made part hereof as Schedule 'B.' Subject, also, to all easements for railroad purposes granted to The Central Railroad Company of New Jersey, on, over and across any portions of the above described lands and the covenants contained in all deeds granting such easements."

The other papers, consisting of a contract of the city with Central District, Incorporated, for constructing the terminal, and a proposed lease, require no comment here except by way of pointing out that both these papers are dependent on and subject to the covenants and defeasance of the deed by the railroad company to the city, at least so far as the two hundred and thirty acres are concerned.

Recurring to what has already been said, that the act of 1920 permits acquisition by the city of lands, lands under water, rights in land, easements, &c., "in fee-simple" and not otherwise, we repeat that a land title conveyed subject to an express defeasance for breach of the covenant to preserve a perpetual monopoly to the grantor of transportation rights over the land conveyed, and as we understand it, other land as well, is not a title in fee-simple, but a title encumbered with an easement and forfeitable for disturbance of that easement; and we confess to some little surprise that the federal government should be willing, as claimed, to finance at a cost of some millions a tide water terminal tied up for all transportation purposes to a railroad company enjoying monopoly rights therein. Be this as it may, we are clearly of opinion that the resolution under review contemplating the acquisition of such a title as that proposed, is not authorized by the statute in question, and must be set aside.

This suffices to dispose of the case before us. There are several other points raised, one or more of which seem to have considerable merit, but for the most part they are in *pari materia* with what has been said in regard to the element of monopoly.

The resolution will be set aside, with costs.